RENDERED:  JULY 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1283-MR

MARK FRECH AND LOUISVILLE
CORRECTIONS FRATERNAL
ORDER OF POLICE LODGE #77                                    APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
ACTION NO. 24-CI-009034


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND MOYNAHAN, JUDGES.

CETRULO, JUDGE:  Mark Frech ("Frech") and Louisville Corrections Fraternal

Order of Police Lodge #77 ("FOP") appeal a Jefferson Circuit Court order denying

their motion for summary judgment and granting summary judgment in favor of

Louisville/Jefferson County Metro Government ("Louisville Metro").  The circuit

court determined it lacked particular case jurisdiction to grant the relief requested by

Frech/FOP – enforcement of an arbitration award – because the arbitrator's award was merely advisory, not binding. After review, we affirm the Jefferson Circuit Court, albeit on different jurisdictional grounds.

## BACKGROUND

In January 2006, Louisville Metro Department of Corrections ("LMDC") hired Frech as a corrections officer. Frech was a member of the FOP and covered by a November 2016 collective bargaining agreement ("CBA") between Louisville Metro and the FOP.

The CBA allows Louisville Metro to discipline members for "just cause." Article 16 outlines the process by which employment grievances are filed and adjudicated. Step 4 provides that the parties may proceed to mediation or "advisory arbitration" in the event that a grievance is not resolved at a lower level. Specifically, Step 4(ii) states that "[t]he decision of the arbitrator shall be advisory in nature with respect to all matters."

In October or November 2018, the Louisville Metro Council amended Louisville Metro Code Ordinance ("LMCO") § 35.056 concerning the grievance procedures within collective bargaining contracts. In pertinent part, the relevant ordinance read:

> [A]nytime a collective bargaining agreement uses the term "arbitration" or "arbitrate", those terms shall, at the election of the Union, mean "binding" arbitration, instead of "advisory" arbitration.

. . .

> 2. The union's election for "binding" arbitration must be transmitted to the Mayor in writing within 45 days after this ordinance becomes effective. If a Union wishes to elect "binding" arbitration or to revoke a prior election, it may do so in writing to the Mayor within 30 days of the expiration date of the applicable collective bargaining agreement.

. . .

> 5. After the union has elected binding arbitration, the arbitration will be binding, except for terminations *not as a result of progressive discipline*, and health insurance benefits. These matters may seek judicial review, de novo, under Kentucky law, if adverse by the parties.

LMCO § 35.056(A)(1)(e) (emphasis added). In December 2018, the FOP notified the Mayor that it elected binding arbitration for its CBA with Louisville Metro. In September 2022, LMDC Director Jerry Collins ("Director Collins") implemented a zero-tolerance policy regarding sexual harassment in the LMDC workplace.

On March 9, 2023, Frech was placed on administrative leave due to sexual harassment allegations (made by another corrections officer) that supposedly occurred the day prior, on March 8. A subsequent investigation concluded that there was a sustained policy violation against Frech.

In June 2023, a Corrections Disciplinary Action Notice ("DAN") recommended Frech's employment be terminated. The only factual allegations

-3-

contained in the DAN related to the events of March 8 and Frech's violation of the zero-tolerance sexual harassment policy.

In July 2023, LMDC terminated Frech's employment. After his termination, Frech (and the FOP) filed a grievance against Louisville Metro alleging noncompliance with the CBA and arguing the termination was not supported by just cause. Eventually, the parties met for a two-day arbitration hearing in May 2024. Frech elected "binding" arbitration by submitting a written transmittal of the election to the Mayor pursuant to LMCO § 35.056(A)(1)(e)(2). As a result, arbitration was to be binding with the exception of "terminations not the result of progressive discipline" in accordance with LMCO § 35.056(A)(1)(e)(5).

During the arbitration hearing and over Frech's objections, Louisville Metro introduced two previous disciplinary actions involving Frech while he was employed with the LMDC. These prior allegations had resulted in a 2015 written reprimand and a 2020 suspension recommendation. Frech opposed the admission into evidence of the prior allegations, but Louisville Metro asserted the prior discipline was relevant to the "level of discipline" and the fact that "the previous discipline occurred for the same policy violation."

Director Collins testified during the arbitration hearing that he did review and consider the prior disciplinary actions. However, Director Collins also

-4-

testified that the March 8 sexual harassment by itself warranted the termination due to the zero-tolerance sexual harassment policy.

In September 2024, the arbitrator ruled in Frech's favor and determined Louisville Metro failed to establish just cause for Frech's termination. Specifically, the arbitrator determined that the two eyewitnesses (the complainant and another officer) to the March 8 incident were not credible. The arbitrator advised Louisville Metro to reinstate Frech with full backpay and benefits, but Louisville Metro declined to follow that directive. Louisville Metro argued the arbitrator's position was erroneous for various reasons, and as Frech's termination was not the result of progressive discipline, the arbitration was merely advisory, not binding. Frech requested the arbitrator enforce the award, but the arbitrator determined that enforcement of the award was outside his retained jurisdiction.

In December 2024, having exhausted his administrative remedies, Frech sought enforcement of the arbitration award through the Jefferson Circuit Court.[1] Frech argued the arbitrator properly determined Louisville Metro failed to meet its burden for termination, and that the arbitration was binding because he was terminated as a result of progressive discipline. Conversely, Louisville Metro

---

[1] Frech and the FOP were listed as co-plaintiffs on the "Complaint to Enforce Arbitration Award." However, as the complaint only sought enforcement of the arbitration award and did not include a cause of action for breach of contract, we shall refer to the party singularly as Frech.

argued that the circuit court, like the arbitrator, lacked jurisdiction to enforce the award as the arbitration was merely advisory and nonbinding. Louisville Metro asserted that Frech was terminated because of the severity of the alleged March 8 sexual harassment violation, not as a result of progressive discipline.

In May 2025, Metro moved for summary judgment and in June, Frech moved in kind. In September, the circuit court entered an order granting Louisville Metro's motion and denying Frech's motion ("2025 Order"). The 2025 Order determined the circuit court lacked particular case jurisdiction to grant the relief requested by Frech because the arbitrator's decision was merely advisory under LMCO and the CBA, thus, not final and binding. The court noted:

> Although the evidence in the record shows that Director Collins reviewed and considered Frech's prior disciplinary actions before implementing Frech's termination, the evidence in the record does not show that the use of those prior disciplinary actions constituted "progressive discipline."

Frech appealed.

## STANDARD OF REVIEW

The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing

CR[2] 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). As summary judgment looks only to questions of law, we review *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016) (citing *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370-71 (Ky. 2010)). Similarly, we review questions involving interpretation of statutes and local ordinances *de novo*. *Lexington-Fayette Urban Cnty. Gov't v. Fraternal Ord. of Police, Bluegrass Lodge #4*, 723 S.W.3d 742, 746 (Ky. 2025) (citations omitted).

## ANALYSIS

The only issue on appeal is whether the Jefferson Circuit Court erred in concluding it did not have jurisdiction to enforce the arbitration award. Ultimately, we agree that the circuit court did not have jurisdiction, but on different jurisdictional grounds.

Jurisdiction, broadly speaking, is the "power of the court to decide an issue in controversy." *Nordike v. Nordike*, 231 S.W.3d 733, 737 (Ky. 2007) (citing BLACK'S LAW DICTIONARY (8th ed. 2004)). A court must have personal, subject matter, and particular case jurisdiction before it may hear a case. *Hisle v.*

---

[2] Kentucky Rule of Civil Procedure.

*Lexington-Fayette Urban Cnty. Gov't*, 258 S.W.3d 422, 429 (Ky. App. 2008) (citations omitted). Here, the circuit court determined it had subject matter jurisdiction but did not have particular case jurisdiction. We disagree.

Subject matter jurisdiction concerns the court's power to hear and rule on a *type* of case, not a *particular* case. *Louisville Hist. League, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 709 S.W.3d 213, 221 (Ky. 2025) (citation omitted). "Subject matter jurisdiction and particular case jurisdiction are related, but they are different in that the former concerns a more broad, general class; whereas, particular case jurisdiction focuses on a more limited or narrow fact-specific situation." *Hisle*, 258 S.W.3d at 429 (citation omitted). In fact, particular case jurisdiction is a subset of subject matter jurisdiction, and "a court that lacks subject-matter jurisdiction over an action will also always lack particular-case jurisdiction[.]" *Id.* (internal quotation marks and citation omitted). Here, the circuit court lacked subject matter jurisdiction rendering a particular case jurisdiction analysis unnecessary.

A court must be *granted* subject matter jurisdiction; *i.e.*, it must be granted the power to hear that type of case before proceeding. *Louisville Hist. League*, 709 S.W.3d at 221 (citations omitted).

> [A] court is deprived of subject matter jurisdiction only where that court has not been given, by constitutional provision or statute, the power to do anything at all. To determine subject matter jurisdiction, the pleadings should

be examined and taken at face value. The court has subject matter jurisdiction when the "kind of case" identified in the pleadings is one which the court has been empowered, by statute or constitutional provision, to adjudicate.

*Id.* (alteration in original) (quoting *Daugherty v. Telek*, 366 S.W.3d 463, 466 (Ky. 2012)). Simply, if a court does not have subject matter jurisdiction, judicial analysis cannot reach the merits of matter because the "court has not been given, by constitutional provision or statute, the power to do anything at all." *Id.* (quoting *Daugherty*, 366 S.W.3d at 466).

Neither Louisville Metro nor Frech challenged the circuit court's subject matter jurisdiction, but that absence is irrelevant as subject matter jurisdiction "is not for a court to 'take,' 'assume,' or 'allow.'" *Nordike*, 231 S.W.3d at 738 (citation omitted). "[S]ubject matter jurisdiction cannot be waived or conferred by agreement, and a party may challenge a court's lack of subject matter jurisdiction any time, even for the first time on appeal." *Bd. of Educ. of Paris v. Earlywine*, 719 S.W.3d 1, 6 (Ky. 2025) (quoting *Commonwealth v. B.H.*, 548 S.W.3d 238, 245 (Ky. 2018)). "Subject matter jurisdiction is binary – '[a] court either has it or it doesn't. . . .'" *Louisville Hist. League*, 709 S.W.3d at 221 (quoting *Nordike*, 231 S.W.3d at 738).

The circuit court determined it had subject matter jurisdiction pursuant to KRS[3] 67A.6908(3), but we disagree due to the specific cause of action that was brought. According to KRS 67A.6908(3), "[s]uits for violation of agreements between an urban-county government and a labor organization representing police officers, firefighter personnel, firefighters, or corrections personnel may be brought by the parties to the agreement in the Circuit Court of the urban-county government." For instance, that statute allows a fraternal order of police lodge to bring a breach of contract claim against an urban-county government for alleged failures to abide by the terms of a collective bargaining agreement. *See River City Fraternal Ord. of Police Lodge 614, Inc. v. Louisville/Jefferson Cnty. Metro. Gov't*, 585 S.W.3d 258 (Ky. App. 2019). However, the action filed below was *not* a breach of contract claim. The action filed below was strictly a request for enforcement of an arbitration award.

Arbitration awards are afforded a high level of deference, and judicial review is limited. *Hastetter v. Commonwealth Pain Specialists, PLLC*, 695 S.W.3d 80, 84 (Ky. App. 2024) (citations omitted). In fact, the evidence supporting an arbitration award is nonreviewable. *Id.* Typically, arbitration awards may only be set aside for a "gross mistake of law or fact constituting evidence of misconduct amounting to fraud or undue partiality." *Taylor v. Fitz Coal Co., Inc.*, 618 S.W.2d

---

[3] Kentucky Revised Statute.

-10-

432, 433 (Ky. 1981) (citations omitted). Relevant here, a local ordinance explicitly permits this limited judicial review of arbitration awards. More specifically, LMCO § 35.056(A)(1)(e)(5) allows the parties to "seek judicial review, de novo, under Kentucky law, if adverse by the parties." However, that limited *de novo* review of arbitration awards is only appropriate for *final*, *binding* arbitration awards, *not advisory* arbitration awards.

While little has been written on "advisory arbitration" in Kentucky, the decision in *River City* provides some guidance. That case, as cited by the circuit court and parties, is helpful for an understanding of advisory arbitration in the Commonwealth, but too factually distinct to be dispositive in this case. In *River City*, a police officer ("Shaw") was fired after a physical altercation with another off-duty law enforcement officer. 585 S.W.3d at 260. After proceeding through the grievance process, the matter spawned two separate lawsuits: (1) Shaw appealed Louisville Metro's decision to terminate her; and (2) her fraternal order of police lodge pursued a breach of contract claim. *Id.* at 262. *River City* is the appeal for the lodge's breach of contract claim. *Id.* at 263-64. This cause of action distinction prevents us from applying an analysis similar to that in *River City*.[4] However, *River*

---

[4] We note, Shaw's action is also factually distinguishable from the case *sub judice* as she was not requesting enforcement of an arbitration award, but rather appealing Louisville Metro's decision to terminate her employment as permitted by KRS 67C.323(3)(a). *Id.* at 262; *see also Shaw v. Louisville/Jefferson Cnty. Metro. Gov't Acting Through its Police Dep't*, No. 2017-CA-000867-MR, 2018 WL 3954278 (Ky. App. Aug. 17, 2018) (unpublished).

-11-

*City* does expressly state that advisory arbitration "is not the equivalent of 'final and binding arbitration[.]'" *Id.* at 265. According to *River City*, advisory arbitration results in recommendations that "the parties are free to consider but not required to adopt." *Id.* As such, advisory arbitration serves as guidance for parties to *consider*, similar to consideration of judicial dicta. *See T-Mobile South LLC v. Kentucky Com. Mobile Radio Serv. Emergency Telecomms. Bd.*, 718 S.W.3d 671, 676 (Ky. 2025) (stating the Court's guidance was "dicta and merely advisory" because it gave suggestions as to what the party could have done differently).

"[A]rbitration is a matter of contract[.]" *Fraternal Ord. of Police, Lodge #4 v. Lexington-Fayette Urban Cnty. Gov't*, 718 S.W.3d 633, 641 (Ky. 2025) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648-50 (1986)). "An appellate court cannot *carte blanche* grant decision-making authority to an advisory arbitrator in contravention of legitimately negotiated terms adopted by the parties." *River City*, 585 S.W.3d at 266. Choosing non-binding, advisory arbitration – as opposed to binding arbitration – is a contractual choice. Kentucky "has long respected freedom of contract and allowed parties to allocate among themselves the foreseeable risks." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 786 (Ky. 2017) (citations omitted). Here, the grievance process within the CBA provides that the parties may proceed to advisory arbitration in the event that a grievance is not resolved at a lower level, and "[t]he

decision of the arbitrator shall be advisory in nature with respect to all matters."

Despite this clear language, and the freedom of the parties to make such an

agreement, this contractual CBA language was *not conclusive* herein due to

Louisville's local ordinance, an ordinance that alters the CBA's contractual terms.[5]

Contrary to the CBA language, LMCO § 35.056(A)(1)(e) allows an

officer to timely elect *binding* arbitration. Yet, notably, the ordinance places limits

on such an election. LMCO § 35.056(A)(1)(e)(5) states that even if binding

arbitration is chosen by the terminated officer (or FOP), that binding conclusion

does not apply to terminations *not a result of progressive discipline*. Stated another

way, even if the officer elected binding arbitration, the binding effect would *only*

apply to terminations that resulted from progressive discipline. Thus, the dispositive

factor as to whether the arbitration was binding, depends upon whether Frech's

employment termination was the result of progressive discipline. If his termination

was *not* a result of progressive discipline, the arbitration was *not* binding. If his

termination was the result of progressive discipline, the arbitration was binding.

Here, the parties agree that after Frech elected binding arbitration, and

pursuant to the local ordinance, the arbitration would be binding *only* if his

termination was the result of progressive discipline. The circuit court determined

Frech's termination was *not* the result of progressive discipline; hence, the

---

[5] Neither party is contesting the validity of LMCO § 35.056(A)(1)(e)(5).

arbitration was merely advisory. We review this factual finding only for clear error. CR 52.01; *see also Moore v. Landes*, No. 2005-CA-002237-MR, 2006 WL 2919064, at *3 (Ky. App. Oct. 13, 2006) (applying clear error factual review to an arbitration award review).[6] Factual findings are clearly erroneous if not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted). "'[S]ubstantial evidence' is '[e]vidence that a reasonable mind would accept as adequate to support a conclusion[.]'" *Id.* (citations omitted). The record shows Director Collins instituted a zero-tolerance policy for sexual harassment violations. The only factual allegation in the DAN related to the events of March 8. The arbitration award does not mention progressive discipline. While Director Collins reviewed and considered Frech's prior discipline, he testified that the March 8 incident by itself warranted termination. Therefore, the circuit court's finding that Frech's firing was not a result of progressive discipline is not clearly erroneous. *See id.* As that finding is not clearly erroneous, the arbitration award is non-binding and advisory, *not binding or final*.

However, judicial review is typically limited to *final* orders. The general rule regarding appellate jurisdiction is that only the *final* orders of a trial court are appealable, and thus appellate courts lack jurisdiction to consider a trial

---

[6] Citing this unpublished opinion as merely exemplative, not binding. Kentucky Rule of Appellate Procedure ("RAP") 41.

court's interlocutory rulings (with some exceptions not applicable here). *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436 (Ky. 2018). A final order is either an "order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under [CR] 54.02." CR 54.01. Thus, non-final orders typically lack ripeness for appellate review. While these finality rules are specific to court orders, as opposed to arbitration awards, we believe the same concepts are applicable. It would be inconsistent for our courts to disallow review of its own non-final orders but then allow review of non-final arbitration awards. Judicial review of *binding* arbitration is quite limited, and – considering our rules of finality – extending judicial review to *advisory* arbitration awards is inappropriate.[7]

"Where there is no final order on a particular question from the trial court, an appellate court lacks subject-matter jurisdiction over that issue." *Ashland Hospital Corp. v. Darwin Select Ins. Co.*, 664 S.W.3d 509, 519-20 (Ky. 2022) (citing KY. CONST. § 111(2) and *Erie Ins. Exch. v. Johnson*, 647 S.W.3d 198, 204 (Ky. 2022)). Extending that concept, while circuit courts have subject matter

---

[7] While not bound by state precedent outside the Commonwealth, we nonetheless note the consistency of our understanding of the non-binding nature of advisory arbitration with that of other states. *See Dyer v. Illinois*, 40 Ill. Ct. Cl. 8, 29 (1983) ("Binding arbitration means nothing more than that the parties are bound by the decision of the arbitrator as opposed to advisory arbitration where the decision of the arbitrator is just that – advisory – and neither party is bound by it."); *Appeal of State Employees' Ass'n of New Hampshire, Inc.*, 661 A.2d 226, 227 (N.H. 1995) (referring to advisory arbitration as "not final and binding"); *Water Works Emp. Local No. 1045, AFSCME, AFL-CIO v. Bd. of Water Works*, 615 P.2d 52, 53 (Colo. App. 1980) (stating "the arbitrator is deprived of any power to bind either party" if the contractual terms call for advisory arbitration).

-15-

jurisdiction to perform a limited review of *binding* arbitration awards, our circuit courts lack subject matter jurisdiction to *enforce non-final, advisory arbitration awards*. Thus, the Jefferson Circuit Court did not err in holding it lacked jurisdiction to enforce the advisory arbitration award.

## CONCLUSION

Accordingly, we AFFIRM the Jefferson Circuit Court order.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

L. Scott Miller
Tyler J. Chelf
Lexington, Kentucky

BRIEF FOR APPELLEE:

Carrie Pearson Hall
John S. Harrison
Louisville, Kentucky